In the Matter of the Construction of the Will of JOHN S. LAPP, Deceased. HELEN R. L. BRAUNSCHWEIGER, Individually and as Executor of JOHN S. LAPP, Deceased, Appellant; RUDOLPH S. LAPP, as Executor of JOHN S. LAPP, Deceased, et al., Respondents.

Fourth Department, December 19, 1956.

*William C. Combs* for appellant.

*William J. Darch* and *Paul A. Boylan* for Rudolph S. Lapp and others, respondents.

*Donald M. Donahue,* special guardian for Roger D. Lapp and others, infants, respondents.

KIMBALL, J.  The executors of the will of John S. Lapp, deceased, petitioned the Surrogate's Court for a construction of the paragraph numbered " Third " of the testator's will and for a determination as to whether, by the terms of the will, the annual premiums on certain annuity insurance policies are required to be paid out of the residuary estate.  The Surrogate has held that such premiums are not a charge upon the estate. The appellant is the former wife and widow of the testator and the annuitant named in two policies in the John Hancock Mutual Life Insurance Company.  The first policy was issued on June 18, 1942.  The annual premium was $1,349.50.  The other policy in the same company was issued on March 12, 1951.  The annual premium was $10,000.  The death beneficiary in both policies was the testator.

Paragraph " Third " of the will is as follows: " I direct my Executors also to pay out of my residuary estate, all premiums, installments or other payments that shall be due or become due after my death, upon any annuity contract that I have purchased or obtained."

It is quite evident from a reading of the whole will that the testator had foremost in his mind the welfare of his wife while she remained unmarried.  He devised to her absolutely all of his real property and bequeathed to her outright all the furniture, household furnishings, silverware, etc., together with jewelry, personal effects, automobiles and garage equipment. His residuary estate was set up in trust, the net income up to and including $15,000 per annum to be paid to his wife.  The amount of net income over $15,000 was to be divided among the children.  Paragraph numbered " Sixteenth " which disposed of the residuary estate contained the following directions in respect to the net income from the trust which was payable to testator's wife:  " If in any year the net income payable to my wife, Helen R. Lapp, prior to her remarriage, from this trust

fund, *plus the annuity income arranged for her under annuity policies that I have obtained* and plus the dividends received by her from her holdings of Lapp Insulator Company, Inc., stock be less than Seven Thousand Five Hundred ($7,500.00) Dollars per year, then and in such case, I direct my Executors and Trustees to make up the difference between said sum of Seven Thousand Five Hundred ($7,500.00) Dollars per year and the amount of such net income derived from the above sources for each year, out of the capital so bequeathed to them, in trust.'' (Emphasis supplied.)

It having been established that the only two annuity policies in existence at testator's death in which either the testator or his wife were mentioned or interested, are the two above-described policies in the John Hancock Life Insurance Company, it would almost seem that any judicial construction of the will would be unnecessary. There are no other policies which provide for an annuity income to the wife so one may well inquire as to what policies the will referred to, if not to them. There can be no question as to the fact that the testator, in making the meticulous provisions for his wife's benefit, took into account insurance annuity policies and the income '' arranged for her '' thereunder. The will needs no construction in that regard.

Upon the hearing, the Surrogate refused to receive in evidence certain testimony of the agents of the insurance company on the ground that they were incompetent to testify to personal transactions with the testator under section 347 of the Civil Practice Act. We think the rulings were erroneous, at least so far as they related to the first policy and we do not agree that the witness, Klug, was shown to be interested in the event. Were it necessary, we would reverse the decree and order a new trial. We do not, however, deem a new trial to be necessary. There is sufficient undisputed evidence in the record to find that the testator '' purchased or obtained '' the policies in question and '' arranged '' for the income therefrom for the benefit of his wife; that it was the intention of the testator that, after his death, the annual premiums on these two policies should be paid out of his residuary estate.

The Surrogate concluded that the testator neither '' purchased '' nor '' obtained '' these two policies because his name was not signed to the application form as the '' applicant.'' His memorandum states: '' The absence of the decedent John S. Lapp's signature on the application for either of the two

policies in question establishes to the satisfaction of this court that he did not apply for the issuance of these policies and therefore did not ' purchase or obtain ' them ". There can be no doubt from the very wording of the will and the other evidence in the case, that the testator thought he had " purchased or obtained " or would, before his death, " purchase or obtain " annuity contracts for his wife's benefit. The Surrogate held that not having signed the application form and having failed to indicate thereon that he was the applicant, it followed that he did not " purchase " or " obtain " the contracts. We think that such was too narrow a construction of the words " purchase " and " obtain " as used in context with the rest of the will, as they must be. The Surrogate gave no weight to any evidence before him except the application forms which are attached to the policies. We minimize the importance of the application forms or how they were filled out. Whether the company's rules or instructions were followed by the testator or the broker in completing these forms is not very material. The rules and instructions were for the information and benefit of the insurer. It was said that the signature of the wife on each policy on the line for the applicant's signature indicates that she " was the *only person* making the application." The record shows that the wife's signature was placed upon the first application. There is no proof that it is her signature upon the second one. As to the first contract, there was a rider dated the same day as the application and the policy. Space was provided for the signatures of both the " applicant " and the "annuitant ". The wife's name appears thereon as the " annuitant ". The space for the " applicant " is blank. In the application for the second policy, the wife's name appears in the body of the form as " full name of annuitant " and also as " owner and holder, if other than applicant." An inspection of the two applications which were in evidence, indicates that the name " Helen R. Lapp " is not in the same handwriting on both applications. It appears quite evident that little attention was given to the instructions, in fine print, as to the filling out of the forms. The fact alone that testator's signature did not appear thereon as " applicant " would be insufficient to hold that he did not " purchase " or " obtain " the contracts in question within the meaning of these words in the will and the intention of the testator.

As we view it, the Surrogate merely decided who it was who made formal application for the policies and he decided that from a mere inspection of the application forms. The real

question was: " Did the testator ' purchase or obtain ' the contracts within the meaning of those words as used by the testator and as he intended they should be understood? " Regardless of the answer to the query of whether the testator or his wife " applied for " or " made application for " the policies, we still must determine whether it was his intention that the residuary estate should pay the premiums upon the policies to which in his will he referred as having been purchased or obtained by him. Had he intended to restrict the benefits for his wife only as to contracts which he " applied for ", he undoubtedly would have so provided. " Applied for " does not mean either " obtained " or " purchased." " Obtain " means " acquire " or " get hold of." That he certainly did in respect to these contracts. Purchase means " to buy for a sum of money." There is evidence that he paid premiums in his lifetime. There is no proof that his wife employed her own funds for that purpose.

We must assume that the testator was not giving instructions in his will, in reference to annuity contracts, as an idle gesture. He specifically directed his attorney to insert these instructions. When he drew the will, the first policy was in force. He had paid the premiums on that contract from his own personal account. In the " Sixteenth " paragraph, he used the plural, " annuity policies ", indicating there might be more than the one then in force. The " annuity income arranged for her " was considered in fixing the amount of income she might receive from the trust fund. He paid premiums on the second contract by checks drawn by him upon a joint account with his wife and the only bank account he then had. The policies were kept in his private safe. There was no proof that his wife, this appellant, " purchased " or " obtained " the contracts or that she paid premiums thereon. The record is devoid of any proof that there were other or different contracts to which the will could be said to refer.

It is our opinion that the evidence is sufficient to find that the testator purchased and obtained the annuity contracts in question; that these are the policies to which he was referring in his will and that it was his intention that, after his death, the premiums should be paid by the executors out of the residuary estate. The decree, so far as appealed from, should be reversed and the matter remitted to the Surrogate's Court with direction to make and enter a decree in accordance with this opinion.

All concur.  Present — VAUGHAN, J. P., KIMBALL, WHEELER, WILLIAMS and BASTOW, JJ.

Decree insofar as appealed from reversed on the law and facts and matter remitted to the Surrogate's Court for further proceedings in accordance with the opinion, with costs to all parties filing briefs payable out of the estate.